**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE S. CASTELLANOS, as Independent Executor of the Estate of ESAU CASTELLANOS, deceased | ) ) ) ) | |
| Plaintiff, | ) ) ) | No. 14 C 1841 |
| v. | ) ) ) | HON. YOUNG B. KIM Judge Presiding |
| CHICAGO POLICE OFFICER SHAWN LAWRYN et al. | ) ) ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S MOTION TO BIFURCATE SECTION 1983 CLAIMS AND TO STAY DISCOVERY AND TRIAL ON THOSE CLAIMS

Plaintiff Michelle S. Castellanos, ("Plaintiff") has sued the City of Chicago ("the City") and Chicago Police Officers Shawn Lawryn ("Defendant Lawryn") and Juan Martinez ("Defendant Martinez) arising from an incident on March 16, 2013, in which the individual named defendants allegedly violated Plaintiff's Decedent's constitutional rights by fatally shooting Plaintiff's Decedent Esau Castellanos ("Decedent"). Pursuant to 42 U.S.C. § 1983, Plaintiff asserts a federal claim of excessive force and a state claim of wrongful death against the individual defendants. See Second Amended Complaint, attached as Ex. A, Counts I and II. As to the City, Plaintiff also asserts an indemnification claim and a claim under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978), alleging that the City caused the constitutional violations alleged against the individual defendants. *Id.* at Counts III and IV. Within her *Monell* claim, Plaintiff has alleged multiple municipal policies and practices, including the failure to "properly and legitimately investigate the use of deadly force by sworn

1

Chicago Police Officers against civilian citizens of Chicago," and the "failure to properly discipline its officers for the illegal use of excessive force." *Id*. at p. 6.

The prosecution and defense of Plaintiff's *Monell* claims – which will involve "colossal" fact discovery,[1] expert discovery, dispositive motion practice, and perhaps trial – threaten completely to overwhelm what otherwise is a straightforward Section 1983 action, to the detriment of the parties, the Court, and the judicial process itself. Accordingly, pursuant to Fed. R. Civ. P. 42(b), the City moves this court to (1) bifurcate Plaintiff's *Monell* claims against it from the claims against the individual defendants, (2) stay discovery and postpone trial on the *Monell* claims until resolution of all of Plaintiff's claims against the named individual defendants, and (3) enter the City's proposed "Consent to Entry of Judgment Against Defendant City of Chicago," attached hereto as Exhibit J.

Common-sense, pragmatic values embodied in Rule 42(b) all favor granting this motion. Granting the motion will avoid unduly burdensome discovery, minimize the possibility of discovery disputes, eliminate the need for a lengthy and complex trial on the City's Section 1983 liability, avoid undue prejudice both to the individual defendants and the City, and relieve Plaintiff of the burden of establishing municipal liability as long as she proves her Decedent's constitutional rights were violated by Defendants Lawryn and/or Martinez, under the terms of the City's proposed "Consent to Entry of Judgment Against Defendant City of Chicago." All told, the City's motion allows the parties to fulfill their duty to "seek resolution of disputes at the least cost in time, expense and trauma to all parties and to the court." Preamble to the Illinois Rules of Profesional Conduct. The City respectfully asks this Court to grant this motion.

---

[1] The City borrows this term from the Court in *Ojeda-Beltran.v. Lucio*, 2008 WL 2782815 (N.D.Ill. July 16, 2008)), which granted the same motion the City brings before it now. See *id*. at *2 ("Plaintiffs' contention that the *Monell* litigation will not require substantial additional resources on the part of the parties is difficult to reconcile with the colossal scope of their *Monell* discovery requests.").

## **ARGUMENT**

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FCRP 42(b). The Seventh Circuit has confirmed that "a district judge may separate claims or issues for trial if the separation would prevent prejudice to a party or promote judicial economy." *Chlopek v. Federal Insurance Company*, 499 11 F.3d 692, 700 (7th Cir. 2007). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Id*. District courts have "considerable discretion to order the bifurcation of a trial." *Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000).

Consistent with the "considerable discretion" vested in them to order bifurcation of claims, courts in this district "'have both granted and denied similar motions by the City.'"[2] In ruling on bifurcation, this Court should "'consider the principles in light of the facts of this case and the parties' arguments,'"[3] and reach a result that "will turn on a 'case-specific assessment of the advantages and disadvantages of bifurcation.'"[4]

Here, bifurcation of the *Monell* claims and stay of discovery related to these claims best serve the interests identified in Rule 42(b) of convenience, economy, expedition, and avoidance of prejudice, and granting the City's motion represents a sound exercise of this Court's inherent power to control its docket.[5] Accordingly, this Court should grant the City's motion.

---

[2] *Kitchen v. Burge*, No. 10 C 4093, Memorandum Opinion and Order, dated November 2, 2012, at 3 (Tharp, J.) (quoting *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *1 (citing cases)). The Memorandum Opinion in *Kitchen* is attached hereto as Exh. B.

[3] *Id.* at 3-4 (quoting *Ojeda-Beltran*, 2008 WL 2782815, at *1).

[4] *Id.* at 4 (quoting *Ojeda-Beltran*, 2008 WL 2782815, at *1).

**A. Bifurcation best serves the interests of litigation and judicial economy.**

Bifurcation allows the City to avoid burdensome and potentially unnecessary discovery and litigation costs should Plaintiff fail to establish a constitutional violation and thus, as a matter of law, be unable to prove any *Monell* violation.[6] Bifurcation "permits a bypass of discovery relating to the municipality's policies and practices, which . . . can add significant time, effort, and complications to the discovery process."[7] The undue burden of such discovery is especially apparent in this case, as it will encompass a significant period of time predating the incident underlying this lawsuit, and will involve the systemic policies and practices of the City, including the Chicago Police Department, the Independent Police Review Authority, and the City Council oversight activity of these municipal entities. Such discovery necessarily will delay what otherwise is a case concerning a discrete encounter between Plaintiff's Decedent and Defendants Lawryn and Martinez.

Given Plaintiff's *Monell* claims, the scope and magnitude of *Monell* discovery indeed will be "colossal." According to Plaintiff, the City caused the alleged violations of Decedent's constitutional rights because it fails to properly investigate the use of deadly force by its officers and to adequately punish and discipline officers in cases in which deadly force is used. To prevail against the City, Plaintiff must adduce evidence that these alleged municipal policies and practices were "widespread, enduring practices that violate constitutional rights in a systematic manner."[8] In addition, Plaintiff must establish that the City's final policymaker was

---

[5] *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).

[6] *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

[7] *Medina v. City of Chicago*, 100 F. Supp.2d 893, 895 (N.D. Ill. 2000) (Kennelly, J.).

4

deliberately indifferent to the various deficient municipal practices alleged by Plaintiff – a demanding task. Prosecution of these numerous, broad, and far-reaching claims will require a great deal of time and resources to gather the information and documents responsive to *Monell* written discovery. Plaintiff probably will seek depositions of high-ranking personnel of the Chicago Police Department, the Independent Police Review Authority, and a member of the City Council.[9] And costly expert discovery invariably will follow fact discovery. Bifurcation plainly furthers convenience, expedition, and economy. Thus, this Court should grant the City's motion.

Granting this motion also promotes judicial economy, and thus protects this Court's interests. Bifurcation of the *Monell* claims eliminates the need for (1) judicial intervention in discovery disputes arising from these claims, which can be frequent and contentious; (2) ruling on the summary judgment motion that the City invariably will bring; and (3) if the City's motion for summary judgment is denied, presiding over a trial that will be lengthier, and legally and factually more complex, if all of Plaintiff's claims are presented simultaneously to a jury.[10] Indeed, the Seventh Circuit explicitly endorsed bifurcation as a means to avoid "the waste of the valuable time and resources of the court," as well as of serving the interests furthered by Rule 42(b).[11] For this reason alone, this Court should grant the City's motion.

**B. Bifurcation will help prevent undue prejudice.**

A single trial of all claims against the individual defendants and the City will severely

---

[8] *See Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993); *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 511 (7th Cir. 1993).

[9] In fact, Plaintiff has already requested the deposition of Chicago Police Superintendent Garry McCarthy in this matter for these purposes.

[10] *See Medina*, 100 F. Supp.2d at 895 ("The trial of the claims 25 against the individual officers is . . . likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims.").

[11] *See Treece v. Hochstetler*, 213 F.3d at 365.

5

prejudice both sets of defendants. Rule 42(b) explicitly identifies avoidance of prejudice as grounds for bifurcation. Bifurcation of the *Monell* claims from the other claims protects the individual defendants and the City from the possible prejudice caused by the introduction at trial of extensive evidence against one set of defendants that should not apply to the other.

"Plainly, the presentation of evidence relating to the wide-ranging allegations of the plaintiff's *Monell* claim create a substantial risk of prejudice for the individual defendants and undermines the ability of those defendants to receive a fair trial."[12] In part to protect the individual defendants from such prejudice, the Court in the *Ojeda-Beltran* case also granted the same motion that is now before this Court:

> We believe that there is a real "danger that evidence admissible on the issues relating to conduct by the City . . . will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s]." As demonstrated by Plaintiffs' complaint and discovery requests, Plaintiffs intend to prove their Monell claim, at least in part, through the introduction of evidence regarding alleged acts of police misconduct committed by non-party officers. We think a substantial risk exists that such evidence would be prejudicial to Defendant officers in their attempts to defend themselves against Plaintiffs' claims and conclude that bifurcation of the Monell claim is a proper means to combat this potential prejudice.[13]

Conversely, prejudice against the City also may arise from a single trial of the claims against the individually named defendants and the City. A jury that finds liability against the individual officers may incorrectly and unfairly find that the City should be liable under *Monell* and its progeny, misconstruing evidence or the complicated law around *Monell*. Accordingly, to

---

[12] *Kitchen*, Memorandum Opinion and Order at 13.

[13] *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *3 (citation omitted); *see also* Judge Zagel's recent acceptance of severing the Monell claim from the underlying claims in *Miranda v. City of Chicago, et al.*, 13 C 5929 (Doc. #77, Aug. 5, 2014).

avoid prejudice that would run to the City and Defendants Lawryn and Martinez, this court should grant the City's motion.

> **C. Bifurcation will not affect Plaintiffs' recovery of any compensatory damages to which he or she may be entitled.**

Bifurcation and a stay of discovery and trial as to the *Monell* claims will not affect Plaintiff's recovery of any compensatory damages that a jury may award her – yet another reason to grant the City's motion. The individually named defendants were all acting within the scope of their employment at all relevant times during their encounter with Plaintiff. Therefore, the City of Chicago has both a statutory and a contractual obligation to indemnify the individual defendants for any judgment against them,[14] while as a matter of law, Plaintiff is not entitled to recover any additional compensatory damages if either or both prevail against the City on her *Monell* claims after a finding of liability against the individual defendants.[15] Thus, Plaintiff has no economic incentive to proceed against the City, if she proves that the individual defendants violated her constitutional rights – the necessary predicate to go forward with *Monell*.

However, although litigation of *Monell* claims provides no monetary windfall to Plaintiff, such litigation generates often substantial attorney fees under 42 U.S.C. § 1988 that accrue solely to plaintiffs' counsel and not to plaintiffs themselves. Hence, granting the City's motion helps minimize any potential abuse of the fee-shifting provisions of Section 1988.[16]

---

[14] *See* 735 ILCS 10/9-102.

[15] *See Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985); *Medina*, 100 F.Supp. at 895-96 ("from an economic standpoint, a prevailing plaintiff in a § 1983 excessive force case against police officers in Illinois gets nothing more from suing the municipality under *Monell* than he would get from suing just the officers . . . . As a result, plaintiffs generally choose to forego the more difficult route of seeking to hold the municipality liable under *Monell*").

[16] *See Williams v. 31 Murphy* (06 C 1199), in which Judge Marovich *sua sponte* opined consistent with the City's view that litigation of *Monell* claims often is driven by attorney fees:

### D. A "pragmatic mindset" favors granting bifurcation motions

Although certain courts in this jurisdiction have found that significant societal interests are served by permitting Section 1983 plaintiffs to adjudicate *Monell* liability,[17] various other courts "approach bifurcation motions with a pragmatic mindset."[18] In *Moore v. Smith*, Judge Gettleman raised the pragmatic concerns discussed above when he queried "whether or not it's even worth pursuing these *Monell* claims when you have individuals, you can't get any extra damages on the *Monell* claim…. I do wonder from time to time why plaintiffs pursue these Monell claims when there is so -- the discovery is more involved, the litigation is much more difficult and the damages are the same."[19] Plaintiffs' counsel essentially agreed, stating that Moore was "a unique case" because the City had not admitted that the individual defendants had

---

> THE COURT: You also have a *Monell* claim in here, right?
>
> PLAINTIFF'S COUNSEL: Yes, we do, your Honor.
>
> THE COURT: Which for the life of me, I don't understand why, but that is neither here nor there. That's your decision. I'll explain it to you why I don't know why. If these state actors [the individual defendants] acted in violation of Section 1983, you're going to have liability that the City is going to pay for in any event. And if they didn't, there's going to be no liability whether there's a policy or practice or not. So the only thing that I see as far as this claim for *Monell* – and my practical judgment is that you just created a whole bunch more of discovery that you may or may not need in addressing the core issue of whether there was excessive force or not, and that is what perplexes me. *I think maybe it is because I am one of the few people in here that [doesn't] get paid by the hour. That is a rather cynical attitude but one that I don't apologize for.*

Transcript of Proceedings — Status Before the Hon. George Marovich, held on October 17, 2006, at 4 (emphasis added). A copy of this transcript is attached as Exh. C.

[17] *See, e.g., Grant v. City of Chicago*, 2006 WL 328265 at *3 (N.D. Ill. Feb. 10. 2006) (Lefkow, J.); Cadiz v. Kruger, 2007 WL 4293976 at *9-11 (N.D.Ill. Nov. 29, 2007) (Schenkier, J.) (discussion of the non-economic benefits to *Monell* claims "that should weigh into the equation"); *Medina* at 896 ("there are . . . non-economic benefits that one can obtain from suing a municipality that are less likely when the plaintiff pursues (or is permitted to pursue) only the individual officer.").

[18] Cruz v. City of Chicago, 2008 WL 5244616, at *1 (N.D.Ill. Dec. 16, 2008).

[19] Transcript of Proceedings before the Hon. Robert W. Gettleman in *Moore v. Smith* (07 C 5908), dated March 31, 2011, at 6-7 (attached as Exh. D).

been acting within the scope of their employment as Chicago police officers.[20] According to plaintiffs' counsel, "we might not have brought this [*Monell* claim] if the City had admitted to scope of employment and color of law in [*Moore*]."[21] Here, as noted above, the City admits that the individually named defendants were acting within the scope of their employment and under color of state law in their encounter with Plaintiffs. Consequently, because the City has "accepted indemnity," then "we can just cut this *Monell* thing loose."[22]

Judge Shadur *sua sponte* has "had occasion in a couple of Section 1983 cases that have considerable age on them to urge that all of the concentration on *Monell* issues that frequently occupies so much time and effort really is not constructive."[23] Notwithstanding his own self-admitted concern about issues of police misconduct, Judge Shadur affirmed that the plaintiff's interest in proceeding expeditiously to trial to adjudicate his individual claims is paramount, and that this interest is promoted by not litigating *Monell* claims:

> . . . when counsel represent individual plaintiffs, not a class, that counsel's primary responsibility is to the individual. And . . . if that then entails the prospect of going to trial on the individual claims without what would be really a major digression and a major amount of time and effort spent on something that doesn't bear on the individual's liability, it seems to me that makes a lot of sense.[24]

---

[20] *Id.* at 7.

[21] *Id.*

[22] *Id.* at 9.

[23] Transcript of Proceedings before the Hon. Milton I. Shadur in *Ramirez v. City of Chicago* (05 C 317), dated March 14, 2008 ("*Ramirez* Transcript") at 2 (attached as Exh. E).

[24] *Id.* at 3-4. *See also* Transcript of Proceedings before the Hon. Milton I. Shadur in *Marshall v. City of Chicago* (08 C 259), dated March 22, 2008 ("*Marshall* Transcript") (attached as Exh. F) at 3 ("too often *Monell* claims occupy a lot more activity and a lot more time than is necessary."); Transcript of Proceedings before the Hon. Milton I. Shadur in *Scott v. City of Chicago* (07 C 3684), dated April 28, 2008 ("*Scott* Transcript") (attached as Exh. G) at 3 ("So whenever I get these [cases with *Monell* issues] now . . . it seems to me that what we are talking about is spending a lot of effort, lot of time in cases that

Indeed, addressing plaintiff's counsel in *Scott*, Judge Shadur characterized his present view on Section 1983 litigation — that it is not properly a vehicle for the advocacy of social change — as akin to a conversion experience:

> I used to be a crusader too in ancient times. But we have after all obligations to our client. And the client is an individual. The client is not a proponent of a cause. I am just as troubled as you are by what has emerged about a lot of the things that went on or didn't go on in the police department. But you see, you don't use the individual lawsuit as kind of a springboard for dealing with that. It would be different if what we were looking at were a class action. . . . But again lawyers are lawyers for clients not for cause[s]. If a cause gets assisted by representation it's one thing. But *the focus here is for Mr. Scott, if his constitutional rights were violated, [to] get a recovery*.[25]

Judge Pallmeyer agrees with Judge Shadur that the primary purpose of Section 1983 litigation is to make the plaintiff whole by an award of appropriate compensatory damages if he can prove a violation of his constitutional rights. According to Judge Pallmeyer in *Nix v. City of Chicago*, in which she granted the City's predecessor "Case or Controversy" motion, the necessary and sufficient relief to Plaintiff

> in a case like this is money. That's the relief. It isn't having established some judgment against somebody. It's getting a check. If there is a defendant who's going to have a judgment entered against him or her and that judgment is going to be paid by the City, then it seems to me that that relief is satisfactory. I am not sure if there is some additional psychic satisfaction that anybody gets out of saying, "We won a judgment against the City of Chicago," then that might be psychic satisfaction that I am not sure is fair to impose fees on the defendant to pay.[26]

---

would otherwise reach trial much more quickly.").

[25] *Scott* Transcript at 5-6 (emphasis added). *See also Ramirez* Transcript at 2 ("Well, you know, I suppose that learning is better even if it comes late.")

[26] Transcript of Proceedings in *Nix v. City of Chicago*, 04 C 7981, before Hon. Rebecca A. Pallmeyer, dated March 16, 2005 (attached hereto as Exh. H) at 7. *See also* Judge Shadur's observation that "again we deal with an individual lawsuit, and with [an] individual client's desire to say, 'Well, and I

And in Judge Pallmeyer's view, it is precisely the payment of a judgment by the municipality that is the most meaningful way to bring about any kind of systemic change that some plaintiffs purportedly seek: "You know what I think moves the City to change? Having to pay a whole lot of money. That's what I think will move the City to change."[27]

Judge Zagel goes even further in his analysis by insisting that a court of law is not even the appropriate forum for bringing about social change and reform. According to Judge Zagel, it is the legislative branch of government (rather than the judicial branch) that has the duty and responsibility to effectuate municipal change, while it is the task of the courts to adjudicate discrete disputes. In *Parker v. Banner*, in which he granted the City's "Case or Controversy" motion, Judge Zagel writes:

> Given a choice between having a court hear a single case or having a legislature conduct a hearing (free from ordinary evidentiary constraints) in order to decide whether and how to change policy, practice or custom, the choice ought to be made in favor of leaving it to the legislature. It is the job of the City Council to deal with citywide policies and practices. The court sits to remedy any particular act by a city employee which violates the Constitution, and it will do so regardless of what the City Council may choose to do. Here that remedy would be a damage award which is being paid by the City. That award is a good reason for it to change policies that are unconstitutional.[28]

E. **The city will agree to entry of judgment against it if Plaintiff prevails on her claims that the individual defendants violated her Decedent's constitutional rights.**

Under *Heller* and its progeny, the litigation of the *Monell* claims asserted by Plaintiff

---

want to expose this also,' is not really the function of the lawsuit in which he is seeking recovery." *Scott* Transcript at 7.
[27] Transcript of Proceedings in *Nix v. City of Chicago*, 04 C 7981, before Hon. Rebecca A. Pallmeyer, dated April 28, 2005 (attached hereto as Exh. I) at 17.

[28] *Parker v. Banner*, 479 F.Supp.43 2d 827, 834 (N.D.Ill. 2007).

ultimately may be unnecessary as a matter of law. If the individually named defendants are found not liable to Plaintiff for any constitutional violation, there is no basis on which to impose liability on the City pursuant to *Monell*.[29] However, if these defendants are found to have violated Plaintiff's Decedent's constitutional rights, the City will consent to the entry of a judgment against it for the amount of damages caused by the violation, plus reasonable attorney fees, without requiring that Plaintiff to prove the elements of Section 1983 municipal liability.[30] Thus, in addition to moving this Court to bifurcate and stay trial and discovery on Plaintiff's *Monell* claims against it, the City asks it to enter its proposed "Consent to Entry of Judgment Against Defendant City of Chicago" in this matter, attached hereto as Exhibit J.

This is no small benefit to Plaintiff, as "the decision of a plaintiff to pursue a *Monell* claim carries with it a heavy burden of discovery and proof."[31] The stipulation allows Plaintiff to obtain a judgment against the City for all the compensatory damages to which she is entitled, as long as she proves her Decedent's constitutional rights were violated, thereby avoiding altogether litigation of the *Monell* claims. This would be true even if the individually named defendants successfully assert a qualified immunity defense on the ground that the offending conduct did not violate a clearly established right.[32] Thus, given the provisions of the Consent, "disposition of the individual claims will either legally or practically end the litigation

---

[29] *See Treece*, 213 F.3d at 364 ("it is well established in this Circuit that a municipality's liability for a constitutional injury 'requires a finding that the individual officer[ ][is] liable on the underlying substantive claim.'") (citation omitted).

[30] *See* "Consent to Entry of Judgment Against Defendant City of Chicago" (Exh. J) at ¶¶ 4-6.

[31] *Medina*, 100 F. Supp.2d at 894.

[32] *See* "Consent to Entry of Judgment Against Defendant City of Chicago" (Exh. J) at ¶ 5.

. . . . If the plaintiff prevails against the officer on his § 1983 claim, he is likely not to want or need to proceed any further. . . ."[33] To the extent that a successful *Monell* claim serves to ensure payment of damages to Plaintiff, as appropriate, the Consent achieves that goal.

Some courts and plaintiffs have expressed concern granting bifurcation of Monell claims might cause delay and potential prejudice to the Plaintiff.[34] But such a concern is unrealistic because (1) Plaintiff will have been compensated in full for damages arising from her Decedent's constitutional injuries, and she will not obtain any additional compensation if she proves her *Monell* claims at trial against the City; (2) if she litigates her claims against the City, Plaintiff must satisfy the stringent elements of proof necessary to establish municipal liability; and (3) the City by its stipulation already has accepted entry of judgment against it on the *Monell* claims, preempting the need for such litigation. As Judge Tharp noted in *Kitchen*, "[t]he express premise of the City's motion is not that the *Monell* claim will necessarily fall by the wayside, but that there is a good chance that it may – either because the individual defendants are found not to have violated the plaintiff's rights or, if they are found to have done so, because the plaintiff concludes that the verdict, and the accompanying damage award, are sufficient after all."[35]

## CONCLUSION

In granting the City of Chicago summary judgment on plaintiff's *Monell* claims in *Moore v. City of Chicago*, Judge Moran stated:

> . . . we are often unsure of the impetus behind alleging Monell
> claims in cases such as this one. . . . claims of municipal liability

---

[33] *Medina*, 100 F. Supp.2d at 895.

[34] *See, e.g., Cruz*, 2008 WL 5244616, at *2 ("[J]udges in this district have echoed Plaintiffs' concerns about delay of the case and possible prejudice to Plaintiffs from that delay.")

[35] *Kitchen*, Memorandum Opinion and Order at 10 (original 50 emphasis) (citing *Parker*, 479 F.Supp.2d at 834 ("If Plaintiff prevails [against the individual defendants], then he can decide whether it is worth pursuing his claim against the City.")).

require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them. But to what end? If the plaintiff prevails against the officer on a § 1983 claim, he or she is not likely to want or need to proceed any further, at least in this district and state. An Illinois statute directs local governments to pay tort judgments for compensatory damages for which its employees are liable; the Seventh Circuit has held that this statute permits the § 1983 plaintiff to bring a claim directly against the municipality and obtain a judgment requiring the municipality to pay the amount due to the plaintiff from the officer. Nor do we believe the municipality is more likely to be sued in its own capacity given that *Monell* claims rarely make it to trial. Furthermore, even if the city is found liable, punitive damages are not an available remedy.[36]

To what end, indeed. For the reasons set forth above, the City of Chicago asks this court to (1) bifurcate Plaintiffs' *Monell* claims against it, pursuant to Rule 42(b); (2) stay both discovery and trial on those claims; and, (3) enter the City's proposed "Consent to Entry of Judgment Against Defendant City of Chicago" for the Plaintiff in this matter, attached hereto as Exhibit J.

Respectfully submitted,

STEPHEN R. PATTON
Corporation Counsel of the City of Chicago

By: /s/ Raoul Vertick Mowatt
Assistant Corporation Counsel
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-3283
Atty. No. 6302587

---

[36] 2007 WL 3037121, *9 (N.D. Ill. Oct. 15, 2007).